**\*\*E-filed 1/3/2011\*\***

United States District Court
For the Northern District of California

1
2
3
4
5
6
7        IN THE UNITED STATES DISTRICT COURT
8        FOR THE NORTHERN DISTRICT OF CALIFORNIA
9             SAN FRANCISCO DIVISION
10
11   LISA GALAVIZ, etc.,                          No. C 10-3392 RS
12              Plaintiff,
         v.
13
14   JEFFREY S. BERG, et al.,
15              Defendants.
     _____/
16
17   PHILIP T. PRINCE, etc.,                      No. C 10-4233 RS
18              Plaintiff,
19                                                **ORDER DENYING MOTIONS TO
                                                  DISMISS FOR IMPROPER VENUE**
20        v.
21   JEFFREY S. BERG, et al.,
22              Defendants.
     _____/
23
24             I.  INTRODUCTION
25        May corporate directors control the venue for shareholder derivative actions brought against
26   them by adopting a bylaw purporting to require that such cases be filed in a particular forum?
27   Under federal procedural law that controls such venue issues, parties may enter into *contracts*—
28   including those where elements of adhesion exist—that contain legally enforceable forum selection

clauses.  Even when bringing a claim under a contract offered on a "take it or leave it" basis, however, a plaintiff can be said to have consented to the forum selection clause when he or she elected to enter into that contract.

A bylaw unilaterally adopted by directors, however, stands on a different footing. Particularly where, as here, the bylaw was adopted by the very individuals who are named as defendants, and after the alleged wrongdoing took place, there is no element of mutual consent to the forum choice at all, at least with respect to shareholders who purchased their shares prior to the time the bylaw was adopted.  Accordingly, nominal defendant Oracle Corporation's motions to dismiss these related actions on the basis that its bylaws specify the Chancery Court of Delaware to be the sole proper venue for derivative actions against it will be denied.

## II.  BACKGROUND

These two nearly identical actions seek to hold the individual defendants, all of whom are directors of Oracle, liable for breach of fiduciary duty and abuse of control.[1]  The complaints allege that between 1998 and 2006, Oracle made sales of software and licenses to the United States government totaling some $1.08 billion, but that through a variety of fraudulent and improper practices, it failed to apply certain discounts to which the government was contractually and legally entitled, resulting in millions of dollars of overcharges.

This alleged overbilling scheme is the subject of a *qui tam* action filed in May of 2007 against Oracle in the Eastern District of Virginia, *Paul Frascella v. Oracle Corporation*, Case No. 07-cv-529.  The government has intervened in *Frascella*, and is pursuing claims against Oracle based on alleged violations of the False Claims Act.

---

[1]   *Galaviz v. Berg*, C 10-3392 RS, which was originally filed in this Court, contains an additional claim for relief for unjust enrichment based on alleged violations of the False Claims Act, 31 U.S.C §§ 3729-3733.  *Prince v. Berg*, No. C 10-4233 RS, was filed first in San Mateo Superior Court and subsequently removed here.  Although *Prince* omits the unjust enrichment claim with its express reference to the False Claims Act, it nevertheless arises under federal law for the reasons explained in a separate order, issued contemporaneously, denying the *Prince* plaintiffs' motion to remand.

United States District Court

For the Northern District of California

In 2006, well before the *Frascella* action or either of these two cases were filed, but after the purported overbilling scheme had allegedly been ongoing for several years, Oracle's Board of Directors adopted a resolution amending the corporate bylaws to add a forum-selection provision for derivative suits.  That bylaw states:  "The sole and exclusive forum for any actual or purported derivative action brought on behalf of the Corporation shall be the Court of Chancery in the State of Delaware."  According to the board minutes submitted by Oracle in support of these motions to dismiss, all of the directors named as individual defendants in these actions were present at the meeting where the bylaws were amended, and they unanimously approved the resolution.[2]

The *Prince* plaintiff expressly alleges that he has owned Oracle shares at all times since 1996.  Although the *Galaviz* plaintiff does not expressly allege when she first became a shareholder, Oracle has not argued that she only acquired her shares after adoption of the forum selection bylaw.

### III. DISCUSSION

The parties are in agreement that these cases present a question of first impression, in that no court has previously ruled on the enforceability of a venue provision for derivative actions contained in corporate bylaws.  Such bylaws are reportedly a recent phenomenon, apparently occasioned by a passing comment in *In re Revlon, Inc. Shareholders Litigation*, 990 A.2d 940, 960 (Del. Ch., 2010), that, "if boards of directors and stockholders believe that a particular forum would provide an efficient and value-promoting locus for dispute resolution, then corporations are free to respond with charter provisions selecting an exclusive forum for intra-entity disputes."

Recognizing the absence of case precedent on point, Oracle relies on the framework for analyzing the enforceability of forum selection provisions that has developed in the context of

---

[2]   The individual director defendants appeared in *Prince* when they filed the notice of removal jointly with Oracle.  In *Galaviz*, plaintiff has filed service waivers executed by each of the directors. The directors and Oracle are represented by the same counsel.  In neither action, however, have the directors explicitly joined in Oracle's motion to dismiss or otherwise responded to the complaint, even though there is no indication in the record that they obtained an extension of time to respond. Under these circumstances, it is reasonable to characterize both the adoption of the venue provision and Oracle's attempt to enforce it through these motions as not only an attempt by the corporation to dictate where it must appear as a nominal defendant in derivative actions, but also as the effort of the directors to control where such claims against them individually will be heard.

contract law. In the seminal *M/S Bremen* decision, the Supreme Court announced that the historical antipathy of courts towards contractual forum clauses reflected an outdated "provincial attitude" that has no place in "present-day commercial realities."  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-15, 92 S.Ct. 1907, 1914-1916 (1972).  Thus, the Court concluded, a venue provision in a "freely negotiated" contract should not be set aside "absent a strong showing that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Id.* at 12, 15, 92 S. Ct. at 1914, 1916.

Notwithstanding the *M/S Bremen* court's reference to contracts that are "freely negotiated" in the absence of "overweening bargaining power," the Supreme Court subsequently applied its presumption in favor of enforcing contractual venue clauses to a form contract between a passenger and a cruise ship line in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522 (1991). Although noting that the contract was still subject to judicial scrutiny for "fundamental fairness," the Court rejected any argument that the passenger's lack of opportunity or bargaining power to negotiate the contract terms rendered enforcement of the venue clause unreasonable.

From these and other precedents, the Ninth Circuit has distilled the rule that a contractual forum clause must be given effect unless there is a showing that, "(1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought."  *R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citations and internal quotation marks omitted).  Oracle contends there is no basis to deny enforcement of its bylaw if it is measured against this standard for contractual forum clauses.

In opposition, plaintiffs argue that the test for validity of contractual forum clauses is simply inapplicable here, and that even if measured under contractual principles, the essential element of mutual consent is lacking.  Plaintiffs do not, however, seriously contest that any of the specific factors identified by the *Argueta* court would weigh against enforcement of the venue bylaw, except to the extent that the lack of any negotiation at all could be considered equivalent to "overweening

United States District Court
For the Northern District of California

bargaining power."[3]  Neither plaintiff suggests the bylaw was the product of fraud or undue influence.  Arguing that there was no agreement as to venue in the first instance, the *Prince* plaintiff expressly does "not even reach the question of whether any 'agreement' was reasonable or whether the factors to be considered according to the Supreme Court and the Ninth Circuit need to be weighed."  *Prince* opposition at 7:18-20.

While the *Galaviz* plaintiff contends it is self evident that enforcing the bylaw will "discourage the pursuit of derivative claims" by increasing their "difficulty and costs," she does not go so far as to suggest that requiring shareholders to pursue claims in Delaware courts would somehow make it "so gravely difficult and inconvenient" as to "for all practical purposes" deprive them of their day in court. *See Argueta*, 87 F.3d at 325.  Similarly, while the *Galaviz* plaintiff cites authority for the proposition that California courts are generally protective of shareholders' rights and have also rejected attempts to deprive plaintiffs of *any* judicial forum through the unilateral imposition of an arbitration requirement, she has not persuasively demonstrated that it would violate fundamental California public policy to require resolution of shareholder derivative actions in a corporation's home state.

Accordingly, were the *Argueta* factors controlling here, there would be little basis to decline to enforce the venue provision of Oracle's bylaws.  Oracle contends that its bylaws can and should be treated as any other contract, citing cases that have, in various contexts, described bylaws as representing a contract between a corporation and its shareholders.  *See, e.g.*, *Stolow v. Greg Manning Auctions Inc.,* 258 F.Supp.2d 236, 249 (S.D.N.Y. 2003) (relying on contractual nature of bylaws to dismiss for lack of standing a third party's claim that an association had failed to comply with its own bylaws); *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 239 (Del. 2008) (characterizing bylaw that shareholders proposed to adopt as an "internal governance contract," and holding it to be an impermissible limitation on directors' obligation to exercise certain fiduciary duties); *see also*, *Andrew Farms v. Calcot, Ltd*., 258 F.R.D. 640, 648 (E.D. Cal. 2009) ("It is

---

[3]  As noted, however, *Carnival Cruise* makes clear that a contractual venue clause may be enforceable even where it has not been expressly negotiated and there is an imbalance in bargaining power.

United States District Court
For the Northern District of California

1    generally accepted that corporate bylaws are to be construed according to the general rules

2    governing the construction of statutes and contracts.").

3              To whatever degree bylaws may generally be contractual in nature, however, Oracle here

4    seeks to rely on principles of *corporate* law with respect to how its bylaws could be amended.[4]

5    Oracle has not pointed to any commercial contract case upholding a venue provision that was

6    inserted by a purported unilateral amendment to existing contract terms.  While Oracle makes much

7    of the fact that cruise ship passenger in *Carnival Cruise* did not have the opportunity to negotiate the

8    forum clause and that it was buried in the "fine print," the fact remains that the provision was

9    present in the original agreement.[5]  Under contract law, a party's consent to a written agreement

10   may serve as consent to all the terms therein, whether or not all of them were specifically negotiated

11   or even read, but it does not follow that a contracting party may thereafter unilaterally add or modify

12   contractual provisions.

13             Oracle cannot persuasively contend that its bylaws are like any other contract—and that

14   therefore the *Argueta* factors control here—while simultaneously arguing that it was permitted

15   under corporate law to amend those bylaws in a manner that it could not have achieved under

16   contract law.  Modern federal law plainly favors the enforcement of contractual venue clauses, but

17   even in the case of a form contract, a court merely gives effect to a bilateral agreement between the

18   parties that any disputes they may have arising out of that agreement will be litigated in a particular

19   forum.  Here, in contrast, the venue provision was unilaterally adopted by the directors who are

20   defendants in this action, after the majority of the purported wrongdoing is alleged to have occurred,

21   and without the consent of existing shareholders who acquired their shares when no such bylaw was

22   

23   [4]   As discussed briefly below, plaintiffs contend that Oracle's Board of Directors lacked the power
      to adopt this particular bylaw even under corporate law.  Assuming it was a valid exercise of
24   corporate power, however, it still represents a unilateral change to the provisions of the bylaws that
      Oracle would not have been able to accomplish under ordinary principles of contract law.
25   

26   [5]   Although much of the *Carnival Cruise* court's discussion would appear to be applicable even
      where a party claims it was unaware of the presence of the venue provision in the contract, the
27   opinion noted that the plaintiffs in that case conceded they had notice of the clause and that they
      therefore, "presumably retained the option of rejecting the contract with impunity."  499 U.S. at
28   595, 111 S.Ct. at 1528.

United States District Court

For the Northern District of California

in effect.  Under these circumstances, there is no basis for the Court to disregard the plaintiffs' choice of forum, which Oracle does not contend is otherwise improper on any grounds, or so inconvenient as to warrant a transfer to another federal court under 28 U.S.C. § 1404(a).

Finally, the parties devote substantial argument to the question of whether or not the adoption of the venue bylaw was within the directors' power under Delaware corporate law. Plaintiffs contend that the effect on shareholders' rights (were the bylaw enforced) is such that only a charter amendment, approved by a majority of the shareholders, could properly limit venue in derivative actions against the corporation.  Certainly were a majority of shareholders to approve such a charter amendment, the arguments for treating the venue provision like those in commercial contracts would be much stronger, even in the case of a plaintiff shareholder who had personally voted against the amendment.[6]

Even assuming, however, that the directors had the power to adopt a bylaw of this nature in the abstract, the enforceability of a purported venue requirement is a matter of federal common law. *Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 512-513 (9th Cir. 1988).  Oracle has not shown federal law requires or even permits the federal courts to defer to any provision of state corporate law that might purport to give a corporation's directors the power to control venue under the circumstances discussed above.  Accordingly, the Court need not, and does not, decide whether the adoption of Oracle's venue bylaw was within the directors' powers as a matter of Delaware law. Because Oracle has failed to show that its bylaw is effective under federal law to limit these plaintiffs' right to bring these claims in this Court, its motions to dismiss will be denied.

---

[6]  The comment in *Revlon* that appears to have precipitated Oracle's bylaw amendment specifically referred to "charter provisions selecting an exclusive forum for intra-entity disputes."  *In re Revlon, Inc. Shareholders Litigation*, 990 A.2d at 960.

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.  CONCLUSION

Oracle's motions to dismiss for improper venue are denied.  Pursuant to the order entered in both the actions on October 7, 2010, defendants retain the right to move to dismiss on such other grounds as may be available.  Defendants shall answer or file such motions within 25 days of the date of this order.

IT IS SO ORDERED.

Dated: 1/3/2011

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE